Shayna Fernandez Watts (027342)
FERNANDEZ WATTS LAW PLLC
5040 E. Shea Blvd. Ste. 272
Scottsdale, Arizona 85254
Phone: (602) 760-5100
Fax: (602) 760-5130
Email: Shayna@FernandezWattsLaw.com
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexis Lindvall, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | Jury Trial Demanded |
| The Law Office of Daniel Hutto, PLLC; Daniel Hutto; Shannon McShay; and John Carbone, | |
| Defendants. | |

This action seeks judgment and remedies for Plaintiff Alexis Lindvall for unlawful pregnancy discrimination, sex discrimination, disability discrimination, and retaliation for exercising protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e as amended by the Pregnancy Discrimination Act of 1978; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Pregnant Workers Fairness Act (PWFA); Arizona's Fair Wages and Healthy Families Act; and Arizona law.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the federal claims asserted in this Complaint under 28 U.S.C. § 1331.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

1

**PARTIES**

3. Plaintiff is an individual who resided in the State of Arizona at all relevant times.

4. Defendant The Law Office of Daniel Hutto (the "Firm") is a limited liability company doing business in Arizona.

5. Defendant Daniel Hutto ("Hutto") is an individual who resides in the State of Arizona and is being sued in his personal capacity for his actions in tort and his actions as an employer under Arizona law, A.R.S. § 23-350.

6. Defendant Shannon McShay ("McShay") is an individual who resides in the State of Arizona and is being sued in her personal capacity for his actions in tort and his actions as an employer under Arizona law, A.R.S. § 23-350.

7. Defendant John Carbone ("Carbone") is an individual who resides in the State of Arizona and is being sued in his personal capacity for his actions in tort and his actions as an employer under Arizona law, A.R.S. § 23-350.

**BACKGROUND**

8. Defendants hired Plaintiff as an Associate Attorney on or about October 26, 2021.

9. In or around August 2022, Plaintiff revealed her pregnancy to the firm's co-owner, McShay, and the managing attorney, Carbone.

10. Plaintiff was subjected to a hostile work environment thereafter, including but not limited to being told many times that her pregnancy was a problem for the firm.

11. Defendants did not have a maternity or paternity leave policy but told Plaintiff she could take unpaid leave.

12. Plaintiff asked about a transition plan for her cases while she was gone repeatedly, and each time she was brushed off and told her cases would be "on ice".

13. Eventually, Plaintiff was tasked with assigning her cases to other attorneys (in addition to her normal caseload) in the office to handle during Plaintiff's anticipated leave.

14. Plaintiff then provided information and updates on all her cases to the assigned attorneys from that point until her leave and Plaintiff included the managing partner, Carbone, on all of these communications.

15. In early 2023, Plaintiff met with Carbone and requested the firm file Notices of Substitution of Counsel Within Firm on all Plaintiff's cases while Plaintiff was out on leave.

16. Without Notices of Substitution, Plaintiff's bar number and reputation would be at stake even though she was on unpaid leave and not permitted to work on the cases.

17. Carbone denied the request outright and immediately for no discernable reason.

18. Throughout Plaintiff's pregnancy, McShay chastised Plaintiff, telling her that her impending maternity leave made McShay's job harder.

19. Plaintiff apologized to McShay on multiple occasions to try to make amends, but the environment was overwhelmingly hostile.

20. In early March 2023, Hutto communicated to Plaintiff her pay would be docked upon return from maternity leave for the benefits received while on leave (e.g. health insurance).

21. Plaintiff continued working until March 30, 2023.

22. On Friday, March 31, 2023, Plaintiff was not feeling well and requested a sick day.

23. Plaintiff went into labor the next day, on Saturday, April 1, 2023, and her baby was born on Sunday, April 2, 2023.

24. Plaintiff began unpaid maternity leave from approximately April 3, 2023 until July 4, 2023.

25. Prior to her return, Plaintiff met with Hutto, McShay, and Carbone about her requests for certain accommodations upon returning from maternity leave, including the ability to work from home one day each week. Plaintiff averred her billable hours would still be met. Defendants denied this request.

26. On July 5, 2023, Plaintiff returned to the office and immediately began experiencing hostility, discrimination, and retaliation, which she complained about.

27. For example, Plaintiff requested accommodations upon her return, one of which was to be able to pump in the office and take calls while doing so.

28. Plaintiff then noticed a picture of a cartoon cow floating around the office.

29. When Plaintiff asked about the picture, Plaintiff was informed Hutto printed it out with the intention that Plaintiff put it on her door as a Do Not Disturb sign while breast pumping.

30. Plaintiff learned Hutto discussed this with several other employees and was mocking Plaintiff prior to her return.

31. Plaintiff felt she was expected to tape the cow to her office door 3 times a day, each time feeling embarrassed and ashamed.

32. Plaintiff also experienced hostility when she needed to pump.

33. McShay was unwilling to talk with her on the phone while she was pumping in her office and instead demanded they discuss cases face to face, after Plaintiff was done pumping.

34. Plaintiff also was abruptly handed back all her cases on her first day back, without the same transition period allotted to the attorneys who took them over, and one of those cases was set for a temporary orders hearing to relocate a client's children to California in 7 days, with pretrial statements and exhibits due to the court in 2 days.

35. In reviewing the file, Plaintiff realized that no exhibits or work had been done to prepare for this hearing and immediately followed up with the assigned attorney and paralegal regarding the status.

36. Carbone replied all to Plaintiff's email,
> If you have issues with the way your colleagues handled your cases in your absence please schedule a time for us to speak in private. Since you will be doing this hearing you should select the exhibits you intend to introduce; please work with your client to obtain the documents you intend to use.

4

37. Plaintiff replied, "I cannot do a hearing that I do not have adequate time to prepare for." Plaintiff had concerns about why the firm had seemingly neglected the client and expected her to be fully caught up on the case, draft a Pretrial Statement, and submit exhibits in two days.

38. Carbone responded:

> A week is enough time to prepare for an hour-long temporary orders hearing. This is not a conversation we will have via email. Please find time on your calendar to meet with Shannon and I if you feel you cannot fulfill your job duties.

39. Curiously, Carbone included two other female attorneys of childbearing age at the Firm on his email.

40. Later that day, Carbone and McShay determined the assigned attorney would cover the hearing and then also decided to take the case away from Plaintiff entirely, despite Plaintiff's insistence that she wanted to keep the case.

41. Not only did this result in lost billable work, but it caused the assigned attorney to resent Plaintiff; this attorney also began being hostile towards Plaintiff.

42. The law office's employees were empowered by firm leadership to act out against Plaintiff after firm leadership made it known that Plaintiff's pregnancy and requested postpartum accommodations were a problem and inconvenient.

43. Defendants hired outside counsel, Andrew S. Lishko at May Potenza Baran & Gillespie, to investigate Plaintiff's complaints.

44. Even though Plaintiff was interviewed by outside counsel, there was no report or resolution regarding the complaints.

45. Moreover, the alleged "investigation" turned into a meeting with Plaintiff, Carbone, and McShay when they joined the meeting unexpectedly and Plaintiff was forced to address them directly with her concerns including the concerns, some of which regarded them.

46. Plaintiff attempted to continue to discuss her complaints and concerns, but Carbone responded by mischaracterizing events, and when Plaintiff attempted to correct

5

him, he snapped back stating words to the effect of: "You will listen to me while I speak! I am your superior!"

47. The "investigation" was inadequate to address the issues or prevent retaliation.

48. The investigation also did not follow the firm's policies; no attempt was made to keep the investigation confidential or to prevent retaliation.

49. Instead, Plaintiff was met with additional acts of retaliation and hostility including unreasonable work assignments and unfair treatment.

50. By August 30, 2023, Plaintiff decided she needed to report the additional retaliation and hostility of firm employees again and did so to Hutto.

51. Hutto assured Plaintiff that there would be a solution, but no plan was created and no investigation was conducted.

52. On October 11, 2023, Plaintiff had a doctor's appointment at 10:15 a.m.

53. Plaintiff met with McShay on her way out to inform McShay of the reason for the appointment—suspected postpartum depression and insomnia—and to request assistance.

54. McShay communicated that she was supportive of Plaintiff seeking help, encouraged Plaintiff to go to the appointment, and assured Plaintiff she was willing to assist as needed.

55. McShay even stated she loved drafting and would be happy to review Plaintiff's work.

56. At Plaintiff's doctor's appointment, her doctor recommended immediate hospitalization for Plaintiff's severe postpartum depression and insomnia.

57. Plaintiff returned to the office and communicated the entire situation to McShay including the diagnosis, disability, and anticipated plan to go to the hospital.

58. McShay communicated this to Carbone who called Plaintiff's husband the same day confirming he was aware of Plaintiff's medical condition as well.

59. Plaintiff was hospitalized overnight from Wednesday, October 11 – Thursday, October 12, 2023.

60. On October 11, 2023 at 1:43p.m., Carbone signed and filed a pleading in a family court matter stating:

> On October 11, 2023, counsel for Mother experienced a personal medical emergency which will require counsel to be out of the office for an indeterminate period and will preclude her from attending the Trial currently set for October 16, 2023.

61. Notably, the pleading does not state Ms. Lindvall resigned and would not be returning; it acknowledges Ms. Lindvall sought medical leave in an emergency situation.

62. Plaintiff texted a firm colleague on October 13, 2023 for advice on how to communicate with firm management regarding the situation, and that colleague suggested Plaintiff reach out on Monday, noting "Nobody here is expecting to hear from you before then anyway."

63. Plaintiff then reached out to her doctor for documentation regarding her condition so that she could provide it to Defendants on Monday when discussing potential accommodations.

64. During this time, Defendants did not contact Plaintiff to ask if she had been discharged from the hospital or whether she was okay.

65. The next day, **Saturday**, October 14, 2023, Defendants terminated Plaintiff, effective October 11, 2023 (the day Plaintiff was admitted into the hospital for postpartum depression).

66. Defendants terminated Plaintiff in an emailed letter.

67. In the letter, authored by Andrew Lishko, Defendants admitted Plaintiff confided in McShay that she was "struggling with sleeplessness and other issues for the past several weeks," and later that she told McShay that a doctor had advised Plaintiff "to immediately go to the hospital because [she] had been advised by the mental health professional that [she was] a danger to [her]self and [her] child."

68. Defendants further admitted that McShay encouraged Plaintiff to go seek medical help.

69. Defendants advised Plaintiff that she was prohibited from returning to the law office for any reason and that her remote access to email and the firm's system had been disabled.

70. Defendants claimed Plaintiff had resigned and made the wholly unsupported conclusion that Plaintiff was unable to practice law.

71. Plaintiff <u>did not resign</u>, nor did she state she was unable to practice law.

72. Plaintiff responded on October 15, 2023, by email requesting a return-to-work date and for Respondent to engage in the interactive process regarding the same.

73. In a letter dated October 17, 2023, Defendants doubled down on the separation, again claiming Plaintiff had resigned based on her communications with McShay wherein she disclosed her postpartum depression and requested accommodations.

74. The letter was threatening in nature and constituted a transparent attempt to dissuade Plaintiff from exercising her legal rights in response to her unlawful termination.

75. After Defendants terminated Plaintiff, Defendants also refused to pay Plaintiff her earned bonus.

76. Defendants set forth a specific formula that Plaintiff relied on when she performed and planned her work obligations and financial goals.

77. Defendants claim Plaintiff is not entitled to her earned bonus since she was unemployed at the time it was paid, but Defendants do not have a written policy in their handbook or otherwise stating this requirement.

78. Defendants have thus failed to pay Plaintiff earned compensation.

79. The firm was well aware of Plaintiff's condition, disability, and anticipated hospitalization—and no point in time did Plaintiff resign.

80. Defendants' actions caused Plaintiff to experience severe emotional distress.

81. Specifically, Plaintiff's insomnia was exacerbated in the nights following the termination.

82. In the time that followed, Plaintiff further experienced ongoing insomnia, increased depression and anxiety, loss of appetite and nausea, headaches, and excessive crying.

83. Plaintiff withdrew from her friends and spent weeks worrying about her ability to provide for her family.

84. Plaintiff filed a timely charge of discrimination on November 6, 2023.

85. Plaintiff obtained her Right to Sue on March 28, 2024.

86. Plaintiff exhausted her administrative remedies and is therefore authorized to file this Complaint pursuant to 42 U.S. Code § 12117.

## COUNT ONE

### Violations of Title VII of the Civil Rights Act

### (Against Defendant The Law Office of Daniel Hutto, PLLC)

87. Plaintiff incorporates herein by reference each and every preceding allegation as though fully set forth herein.

88. Title VII makes it unlawful for an employer to "fail to refuse to hire or to discharge an individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

89. The Pregnancy Discrimination Act of 1978 amended Title VII to prohibit sex discrimination on the basis of pregnancy in any aspect of employment including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, such as leave and health insurance, and any other term or condition of employment.

90. The Firm and its employees engaged in discrimination made unlawful under Title VII and the PDA through their improper treatment of Plaintiff because of her sex and pregnancy.

91. The Firm and its employees subjected Plaintiff to a hostile work environment because of Plaintiff's sex and pregnancy.

92. The Firm also retaliated against Plaintiff in violation of Title VII after she reported unlawful discrimination.

93. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities including benefits and work opportunities.

94. The unlawful employment practices complained of above were intentional.

95. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

96. Plaintiff has suffered damages as a result of Defendants' unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## COUNT TWO

### Violations of the Pregnant Workers Fairness Act

### (Against Defendant The Law Office of Daniel Hutto, PLLC)

97. The PWFA requires covered employers to provide reasonable accommodation to employees and applicants if needed because of pregnancy, childbirth, or related conditions unless it causes an undue hardship.

98. Under the PDA in Count I, employers cannot refuse to provide accommodations to employees based solely on pregnancy, potential/intended pregnancy, childbirth, etc. if the same accommodations are provided to other employees who are similar in their ability (or inability) to work.

99. By contrast, the PWFA demands employers provide reasonable accommodation for those with physical or mental conditions arising from pregnancy, childbirth, or related medical conditions, and such individuals will not have to show a non-pregnant employee received the requested accommodation as they do under the PDA; such individuals simply have to show that they are covered under the PWFA and that they require a reasonable accommodation due to a physical or mental condition related to pregnancy, childbirth, or a related condition.

100. Plaintiff is a covered individual under the PWFA.

101. Plaintiff required reasonable accommodations related to pregnancy/childbirth, including but not limited to her request to work from home one day a week upon her return; general flexibility regarding attendance hours so long as her billable hours' requirement was met; privacy while pumping while also being able to work by phone and on her computer during pumping sessions; assistance with cases and drafting; and leave, including maternity leave and subsequent leave to address her postpartum depression.

102. Defendants denied many of Plaintiff's requests.

103. The unlawful employment practices complained of above were intentional.

104. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

105. Plaintiff has suffered damages as a result of Defendants' unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## COUNT THREE

**Discrimination, Failure to Accommodate, and Retaliation in**

**Violation of the Americans with Disability Act**

**(Against Defendant The Law Office of Daniel Hutto, PLLC)**

106. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

107. The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

108. Defendants unlawfully discriminated and retaliated against Plaintiff when they failed to engage in the interactive process, failed to provide a reasonable accommodation, and terminated Plaintiff on the basis of her disability and for requesting an accommodation.

109. As a result of Defendants' actions, Plaintiff suffered damages for which she should be compensated in an amount to be determined at trial.

## COUNT FOUR

### Violations of the Fair Wages and Healthy Families Act

### (Against All Defendants)

110. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

111. Defendants purposefully and willfully terminated Plaintiff's employment following her use of what should have been protected sick time.

112. Plaintiff suffered an adverse employment action when Defendants terminated her.

113. There is a causal link between Plaintiff's attempted use of sick time and the adverse employment action.

114. Defendants did not have legitimate, non-retaliatory reasons for their actions, and their actions were a violation of Arizona law.

115. Any reasons that Defendants may proffer are merely pretext for the underlying retaliatory motive.

116. Under A.R.S. § 23-364(G), Plaintiff is entitled to collect from Defendants an amount sufficient to compensate her and to deter future violations by Defendants in an amount not less than $150 each day the violation continued or until judgment is final.

117. Additionally, the FWHFA requires employers to give their employees paid sick leave, and it prohibits retaliation against employees who take sick leave. A.R.S. §§ 23-364, 23-372.

118. And if an employer takes an adverse action against an employee within 90 days of that employee taking sick leave, it "raise[s] a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons." A.R.S. § 23-364(B).

119. Plaintiff took sick leave on October 11, 2023, and Defendants fired her that same day.

120. The temporal proximity between Plaintiff taking sick leave and her termination triggers the above-mentioned rebuttable presumption, and Defendants are presumptively liable to Plaintiff for unlawful termination under the FWHFA.

121. Plaintiff is further entitled to her attorney's fees and costs pursuant to A.R.S. § 23-364(G).

## COUNT FIVE

### Failure to Pay Wages Under A.R.S. § 23-355

### (Against All Defendants)

122. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

123. Defendants failed to pay wages due and owing to Plaintiff, namely her earned bonus.

124. Defendants' failure to pay monies owed was intentional and done in bad faith.

125. Under A.R.S. §23-355(A), Plaintiff is entitled to an amount equal to treble the unpaid wages.

126. Plaintiff is also entitled to attorneys' fees pursuant to A.R.S. § 23-364.

## COUNT SIX

### Intentional Infliction of Emotional Distress

### (Against Defendants Hutto, McShay, and Carbone)

127. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128. Defendants' conduct, as described in this Complaint, was extreme and outrageous and constituted a complete and willful disregard of Plaintiff's protected rights.

129. Defendants rushed to terminate Plaintiff on a weekend knowing Plaintiff would update them and request accommodations upon her return on Monday.

130. Defendants either intended to cause emotional distress to Plaintiff, or recklessly disregarded the near certainty that such distress would occur.

131. Plaintiff did, in fact, experience severe emotional distress because of Defendants' actions.

132. Defendants' actions were willful, malicious, and done with an evil mind, or with reckless indifference to Plaintiff's rights, thereby warranting an award of punitive damages.

## COUNT SEVEN

### Breach of the Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

133. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

134. Plaintiff's employment with Defendants is contractual in nature under Arizona law.

135. Defendants had a duty to deal with Plaintiff in good faith with respect to her employment.

136. Defendants breached their duty of good faith and fair dealing by failing to communicate with Plaintiff regarding the terms and conditions of her employment described above.

137. As a result of Defendants' breach of the duty of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial.

138. Defendants are liable to Plaintiff in an amount equal to what would be reasonable compensation.

139. Plaintiff is entitled to an award of attorneys' fees and costs as this matter arises out of contract and pursuant to A.R.S. § 12-341.01.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

A. Issue a judgment declaring the conduct of Defendants as described above violated Plaintiff's rights under Title VII, the Americans with Disabilities Act, the Pregnant Workers Fairness Act (PWFA), Arizona's Fair Wages and Healthy Families Act and Arizona common law;

B. Issue a judgment awarding Plaintiff compensatory and punitive damages in amounts to be determined by the finder-of-fact at trial;

C. Issue a judgment awarding Plaintiff her reasonable costs and attorneys' fees against Defendants;

D. Issue a judgment awarding Plaintiff all other relief that is just and proper against Defendants under the circumstances.

DATED this 5th day of April 2024.

FERNANDEZ WATTS LAW PLLC

/s/*Shayna Fernandez Watts*
5040 E. Shea Blvd. Ste. 272
Scottsdale, Arizona 85254
*Attorney for Plaintiff*

I certify that I electronically
transmitted this document this 5th day
of April 2024 using CM/ECF.

/s/ *Tiffany Fernandez*

15