Andrew S. Lishko, Esq. (SBN 033136)
Carrie A. Laliberte, Esq. (SBN 032556)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
1850 N. Central Avenue, Suite 1600
Phoenix, AZ 85004-4633
Telephone:   (602) 252-1900
Facsimile:   (602) 252-1114
Email:   alishko@maypotenza.com
          claliberte@maypotenza.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexis Lindvall,<br><br>                    Plaintiff,<br><br>v.<br><br>The Law Office of Daniel Hutto, PLLC; Daniel Hutto; Shannon McShay; and John Carbone,<br><br>                    Defendants. | Case No. CV-24-00768-PHX-DWL<br><br>**MOTION FOR PARTIAL DISMISSAL OF CLAIMS**<br><br>(Assigned to Hon. Dominic W. Lanza) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants The Law Office of Daniel Hutto, PLLC (the "Law Office"), Daniel Hutto, Shannon McShay, and John Carbone (together, Hutto, McShay, and Carbone are referred to as the "Individual Defendants") hereby move this Court to dismiss Count Nine (9) of Plaintiff Alexis Lindvall's First Amended Complaint.

Plaintiff alleges various claims for discrimination and harassment stemming from the end of her employment with the Law Office. While Defendants strongly disagree with the allegations in the First Amended Complaint, even assuming the truth of the allegations therein (as the Court must at this stage), this Court should dismiss Plaintiff's Count Nine (9) for Intentional Infliction

of Severe Mental Distress, because Plaintiff has failed to state a claim for relief.[1] Arizona law is clear that it is extremely rare for an employer's conduct to be so outrageous and extreme that it meets the elements of an Intentional Infliction of Emotional Distress claim. Along with sufficiently outrageous conduct, a plaintiff must plead that she experienced severe emotional distress. Plaintiff alleges neither. She does not allege conduct which meets the outrageousness standard, that is, conduct that goes "beyond all possible bounds of decency … [and is] atrocious, and utterly intolerable in a civilized community." *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980) (citing Restatement (Second) of Torts § 46). And the type of distress she alleges has previously been rejected by Arizona courts as not sufficiently severe enough to state a claim. Despite an amendment attempting to address these previously raised deficiencies, Plaintiff still has not stated a claim for Intentional Interference of Emotional Distress. Accordingly, Count Nine (9) of Plaintiff's First Amended Complaint should be dismissed.

Consistent with L.R.Civ. 12.1(c) and this Court's preliminary order (Doc. 5), a certificate of conferral is filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     Background**

Defendants are a law firm and attorneys who supervised Plaintiff, an associate attorney formerly employed with the Law Office.[2] (Doc. 10, First Amended Complaint ("FAC"), at ¶¶ 4–6, 9). Approximately 10 months into her employment, Plaintiff disclosed that she was pregnant. (*Id.* at ¶ 12). Despite not having a maternity, paternity, or child bonding leave policy, the Law Office provided Plaintiff 13 weeks of unpaid maternity leave. (*Id.* at ¶¶ 14, 26).

---

[1] Plaintiff will answer the allegations in the First Amended Complaint following this Court's ruling on the Motion. *See ThermoLife Intern., LLC v Gaspari Nutrition Inc.*, No. CV 11–01056–PHX–NVW, 2011 WL 6296833, at *5 (D. Ariz. Dec. 16, 2011) (noting that filing a motion for partial dismissal of some of plaintiff's claims tolls the answer for responding to all claims).
[2] Ms. McShay and Mr. Hutto are "co-owners" of the Law Office, and Mr. Carbone is the managing attorney. (*See* Doc. 10. at ¶12).

Plaintiff returned to work after her leave, was returned her cases, and complained about the work needed to prepare for an hour-long hearing set a week after her return. (*Id.* at ¶¶ 39, 42–45). When she was told she needed to handle the hearing, and to speak privately with her managing attorneys if she felt she could not, she complained of discrimination. (*Id.* at ¶¶ 39, 43–45, 51).

The balance of Plaintiff's allegations relate to her belief that she was discriminated against, including by:

- Being told her pregnancy was a "problem" and made Ms. McShay's "job harder" (*id.* at ¶¶ 13, 21);
- Her disagreement over having to assign her own cases, and her receiving them back when she returned to work (*id.* at ¶¶ 15-20, 39, 41–49);
- A "Do Not Disturb" sign shaped like a cow she alleges she needed to use while breast pumping (*id.* at ¶¶ 33-37); and
- Unidentified "hostility" from Defendants or co-workers (*id.* at ¶¶ 31, 37, 56).

Plaintiff's employment ended the week of October 11, 2024, after she left the office and failed to communicate with the Defendants regarding her need for further leave (in violation of Law Office policy). Plaintiff alleges that she informed Ms. McShay on October 11 that she had post-partum depression and insomnia, and that she required hospitalization to address the same. (*Id.* at ¶¶ 59 – 65). As Plaintiff admits, "Ms. McShay communicated that she was supportive of Plaintiff seeking help, encouraged Plaintiff to go to the appointment, and assured Plaintiff she was willing to assist as needed." (*Id.* at ¶ 61).

After communicating with Ms. McShay on October 11, Plaintiff does not allege she had any further communications with any Defendant to provide an update on her status. (*Id.* at ¶ 68). Instead of providing an update to the Defendants, and despite being fully capable of doing so by Thursday evening October 12, 2023, Plaintiff instead reached out to a "colleague" regarding "how to communicate with firm management" (*id.* at ¶¶ 69, 72). By implication, this colleague was not a part of Law Office management, and had no authority to bind the same.

Having not heard from Plaintiff for days, Defendants communicated their belief that she had resigned from her employment. (*Id.* at ¶ 78). Plaintiff received this communication days after she had returned from the hospital. (*Compare id.* at ¶ 69, *with id.* at ¶ 75). When Plaintiff's employment ended, she was directed to not communicate with the Law Office's clients, asked not to return to the office, and her items were packed up and delivered to her door. (*Id.* at ¶¶ 98–100).

Plaintiff alleges she experienced "severe emotional distress" as follows:

> worry about the clients she was serving and the impact her firing might have on their interests in their respective cases, and an unexpected loss of income and financial hardship. Her insomnia and anxiety was exacerbated following her unexpected and unlawful termination. She experienced ongoing insomnia, increased depression and anxiety, loss of appetite and nausea, headaches, humiliation, excessive crying, loss of self-worth and self-doubt, exhaustion, edginess, and intense anger.
>
> Plaintiff withdrew from her friends and spent weeks worrying about her ability to provide for her family.

(*Id.* at ¶¶ 90–91).

## II.     Procedural Background

After Plaintiff filed her Complaint, Defendants notified her that multiple claims—including her Intentional Infliction of Emotional Distress Claim ("<u>IIED</u>")[3]—failed to state a claim and required amendment. As required by L.R.Civ. 12.1 and this Court's preliminary order (Doc. 5), the parties met and conferred, and Plaintiff filed the FAC.

Defendants again notified Plaintiff that, even with new allegations, the IIED claim continued to fail to state a claim for relief. After meeting and conferring, the parties were unable

---

[3] Plaintiff has rebranded her Intentional Infliction of "Emotional" Distress claim originally pled in the Complaint as an Intentional Infliction of "Severe Mental" Distress claim in the FAC. *Compare* Doc. 1 at 13:20-22, *with* Doc 10 at 18:6-7. Arizona law does not appear to recognize an independent tort for "severe mental distress", and on this basis alone, Count Nine (9) of the FAC can be dismissed. To the extent Plaintiff is simply using an argumentative recharacterization of an IIED claim, the Motion proceeds with an analysis under the elements of such a claim.

4

to agree that the pleading was curable in any part by a permissible amendment. Plaintiff indicated no further amendment was necessary, and that she was prepared to stand by the allegations in the FAC alone. This Motion followed.

### III. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Although Rule 8 does not require "detailed factual allegations," *id.*, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*, 556 U.S. at 678.

When determining whether a claim has been stated, the court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

IV.     **Legal Argument**

**A. Plaintiff has failed to state a claim for IIED.**

A plaintiff alleging intentional infliction of emotional distress must demonstrate three elements: (1) the defendants' conduct was extreme and outrageous, (2) the defendants intended to inflict distress, or recklessly disregarded that their conduct would result in the victim's emotional distress, and (3) the defendants' conduct actually caused severe emotional distress. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007). Plaintiff has failed to adequately plead the first and third elements.

**1. Plaintiff has failed to plead conduct which is sufficiently "extreme" and "outrageous."**

The Court must first determine whether the alleged acts are sufficiently extreme and outrageous to state a claim for relief. *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 428 (App. 1995); *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. App. 1995). In the 12(b)(6) context, the trial court is to act as a gatekeeper to determine whether the alleged actions are so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL, 2018 WL 6727267, at *10 (D. Ariz. Dec. 21, 2018) (cleaned up). Only when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous does the issue go to the jury. *Mintz*, 905 P.2d at 563; *see also Lucchesi v. Frederic N. Stimmel, M.D., Ltd.*, 716 P.2d 1013, 1016 (Ariz. 1986).

"[C]onduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." *Reel Precision, Inc. v. FedEx Ground Package Sys., Inc.*, No. CV-15-02660-PHX-NVW, 2016 WL 4194533, at *2 (quoting *Watts*, 619 P.2d at 1035). "It 'must completely violate human dignity. The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Id.* at *2 (quoting *Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. App. 1987)).

"It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz*, 183 Ariz. at 554. "Evidence of insensitivity and cruel disregard for others is insufficient." *Pontikis v. Lucid USA Inc.*, No. CV-22-02061-PHX-GMS, 2023 WL 6127693, at *3 (D. Ariz. Sept. 19, 2023) (*citing Mintz*, 905 P.2d at 564).

Where Arizona courts have found an employer's actions were outrageous and extreme, it is usually in the context of sexual harassment. *See, e.g.*, *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1059 (9th Cir. 2007) (noting that a jury could find conduct outrageous and extreme when plaintiff's supervisor was "propositioning her inside and outside of the office, following her into the bathroom, standing outside the toilet stall and then grabbing her and sticking his tongue in her mouth."); *see also Ford v. Revlon*, 734 P.2d 580, 585 (Ariz. 1987) (finding employer acted outrageous and extreme by ignoring many complaints of aggressive sexual harassment and propositioning by a supervisor for over a year, which ultimately culminated in the supervisor sexually assaulting plaintiff and plaintiff's attempted suicide).

As alleged, Ms. Lindvall's claims do not rise to the level of outrageousness required by Arizona law. She alleges:

- She was told that her pregnancy was a "problem" and made Ms. McShay's "job harder" (Doc. 10 at ¶¶ 13, 21, 35);
- That she was provided 13 weeks of leave (*id.* at ¶¶ 14, 26);
- She disliked having to assign her own cases, and she received her cases back when she returned to work (*id.* at ¶¶ 15-20, 39, 41–49);
- She felt "embarrassed" by a "Do Not Disturb" sign shaped like a cow, but notably does not allege she ever complained to or communicated with anyone regarding this (*id.* at ¶¶ 33-37);
- She experienced unidentified "hostility" from Defendants or co-workers (*id.* at ¶¶ 31, 37, 50, 56);

- She was denied accommodations, such as working remotely one day a week for "post birth needs" (*id.* at ¶ 28); and
- After she left the hospital and failed to communicate with Defendants, Defendants communicated their belief that Plaintiff had resigned, and notified Plaintiff of their acceptance of her resignation (*id.* at ¶¶60–82).

Even assuming these and the other FAC allegations are true, they are not sufficiently outrageous to state an IIED claim.

Plaintiff's allegations that she was told her pregnancy was a problem are not sufficiently outrageous. As this district has previously noted, such verbal comments are not outrageous enough to meet the standard. For example, in *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013 (D. Ariz. 2011), the plaintiff alleged that her supervisor engaged in sexual talk, made sexual gestures in her presence, and attempted to involve her in some conversations with sexual topics. That court found the plaintiff had not alleged facts demonstrating the supervisor's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 1023–24 (quoting *Mintz*, 905 P.2d at 563).

Plaintiff alleges that she found the end of her employment and the letters she received to be upsetting. But "[t]ermination decisions and circumstances surrounding an employer's method of discharging an employee, whether wrongful or not, generally do not rise to a level of conduct extreme enough to establish an intentional infliction of emotional distress claim." *Matson v. Safeway, Inc.*, No. 3:12-CV-12-8206-PCT-PGR, 2013 WL 6628257, at *6-7 (D. Ariz. Dec. 17, 2013). Arizona courts have not found it sufficiently outrageous for a Plaintiff to be terminated after an employer forced the employee to return to work sooner than her doctor recommended, and then ended her employment by letter delivered to the employee in the hospital at a time she was hospitalized for emotional distress. *Mintz*, 905 P.2d at 561–64 (granting defendant's motion to dismiss plaintiff's IIED claim). Nor is it considered outrageous to terminate an employee's employment using an armed guard escort in front of the new media, which was specifically

invited to watch the termination. *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1386-87 (Ariz. App. 1984). *See also Reel Precision,* 2016 WL 4194533, at *4 (finding that even if court disagreed with sensibility of management decision to publicly shame drivers who got into accidents, "the law does not mandate good management or outlaw fear management"). *See also Pontikis,* 2016 WL 6127693, at *3 (granting motion to dismiss because "being publicly reprimanded", receiving "negative comments, or "ostracizing" Plaintiff insufficient to state a claim).

Even if Plaintiff believes she was "falsely" accused of resigning, false accusations alone are not enough to constitute an intentional infliction of emotional distress. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747–48 (9th Cir. 2004) (collecting cases). Even assuming that Defendants acted primarily with a retaliatory or discriminatory motive does not rise to the level of necessary extreme and outrageous conduct. *Udd*, 2018 WL 6727267, at *11.

Finally, when Plaintiff's employment ended, she was directed to not communicate with the Law Office's clients, asked not to return to the office, and her items were packed up and delivered to her door. (Doc. 10 at ¶¶ 98–100). Far from being outrageous, these actions are reasonable for a law firm to take when a departing employee leaves the law firm. A law firm and its attorneys must safeguard confidential client information as part of their ethical duties, and mitigating discord with other employees through not allowing an employee to return to the office is a common part of any end of employment.

Plaintiff has failed to plead sufficiently outrageous and extreme conduct to satisfy the first element of her IIED claim, and on this basis alone, Count Nine (9) should be dismissed.

### 2. Plaintiff has failed to allege that she experienced severe emotional distress, as opposed to a normal level of emotional distress.

To satisfy the third element of an IIED claim, courts have held that "a line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison,* 650 P.2d 496, 501 (Ariz. App. 1982) (citation omitted). "The law intervenes only where the distress inflicted is so severe that

9

no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." Restatement (Second) of Torts § 46 cmt. j (1965). "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.*

Arizona courts have rejected the following as insufficient to satisfy the severe emotional distress requirement:

- Crying, being stressed and upset, and having headaches (*Spratt v. N. Auto. Corp.*, 958 F.Supp. 456, 461 (D. Ariz. 1996));
- Shock, stress, moodiness, and estrangement from friends and coworkers (*Bodett*, 366 F.3d at 747); and
- Difficulty sleeping (*Midas Muffler Shop*, 650 P.2d at 501).

By contrast, courts have found severe emotional distress has been pled where the plaintiff developed "high blood pressure, a nervous tic in her left eye, chest pains, rapid breathing", "felt weak, dizzy, and generally fatigued", and needed to consult a physician. *See Ford*, 734 P.2d at 583.

The FAC states:

> 90. Defendants' actions caused Plaintiff to experience severe emotional distress, worry about the clients she was serving and the impact her firing might have on their interests in their respective cases, and an unexpected loss of income and financial hardship. Her insomnia and anxiety was exacerbated following her unexpected and unlawful termination. She experienced ongoing insomnia, increased depression and anxiety, loss of appetite and nausea, headaches, humiliation, excessive crying, loss of self-worth and self-doubt, exhaustion, edginess, and intense anger.
>
> 91. Plaintiff withdrew from her friends and spent weeks worrying about her ability to provide for her family.

(Doc. 10 at ¶¶ 90-91).

On a preliminary note, it is highly material that Plaintiff's description of her emotional distress all stems from her alleged "firing" and "unlawful termination." *Id.* At no point in the FAC does Plaintiff tie her alleged emotional distress to any other activity by Defendants.

The allegations in the FAC mirror the same normal level of distress which have been rejected by Arizona courts as insufficiently severe. Plaintiff alleges that Defendants caused her to "worry" about her clients' interests. (Doc 10 at ¶ 90). But there is no allegation, nor is it apparent, that her worry was such that no reasonable person should be expected to bear it. Plaintiff is a licensed attorney who practices in a litigious and highly emotionally charged field: family law. (*See id.* at ¶¶ 8–9, 70). Worry, concern, and anxiety regarding her client's interests are a common and widespread part of her chosen profession. *See* Deborah L. Rhode, *Managing Stress, Grief, and Mental Health Challenges in the Legal Profession; Not Your Usual law Review Article*. 89 Fordham Law Review 2565 (discussing the high levels of stress, anxiety, and substance abuse among lawyers).[4] The expectation of "complete emotional tranquility" is not reasonable. Restatement (Second) of Torts § 46 cmt. j.

Plaintiff alleges she had "ongoing insomnia" which was "exacerbated." In other words, Plaintiff continued to experience sleeplessness. Arizona has previously rejected this as insufficiently severe. *See Midas Muffler Shop*, 650 P.2d at 501. Further, Plaintiff's classification of "ongoing insomnia" which was "exacerbated" indicates Defendant's conduct did not actually cause same, as she admits she had been dealing with this issue prior.

---

[4] This Court can take judicial notice of facts not reasonably in dispute without converting the motion to dismiss to a motion for summary judgment. Fed. R. Evid. 201 (court can take judicial notice of "facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). Defendants request this Court take judicial notice that the practice of law is stressful, and attorneys worry about the needs of their clients.

Plaintiff further alleges that she had "headaches, humiliation, excessive crying" along with other normal emotions following the end of employment (and becoming a new parent), and that she "spent weeks" worrying about providing for her family. (Doc 10 at ¶¶ 90-91). But headaches, humiliation, crying, and anger have previously been rejected as not severe enough. *Spratt*, 958 F. Supp. at 461; *see also* Restatement (Second) of Torts § 46 cmt. j ("Emotional distress . . . includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises."). And spending a few *weeks* worrying following the end of employment or being estranged from friends has been rejected as well. *Bodett*, 366 F.3d at 747. Again, all of these could be expected to materialize from the end of an employee's employment. They are not beyond what the reasonable person is "expected to endure."

Notably, Plaintiff does not allege that, because of Defendants' conduct, she required any treatment, hospitalization, medical bills, or even that the alleged distress continues to this day. *See* Restatement (Second) of Torts § 46 cmt. j (1965) (noting that "the intensity and the duration of the distress are factors to be considered in determining its severity."). It is also clear from the allegations that Plaintiff's postpartum depression, anxiety, and insomnia all pre-existed the end of her employment and are the result of her pregnancy and becoming a new parent, not Defendants' alleged actions. To that end, the FAC does not allege that Defendants *caused* these conditions, only that they "exacerbated" the same.

As Judge Snow recently observed when granting a motion to dismiss an IIED claim, that a complaint may sufficiently plead retaliation does not mean this amounts "to a claim for the intentional infliction of emotional distress as a matter of law." *Pontikis* 2016 WL 6127693, at *3. That is the situation before this Court. Plaintiff's IIED claim should be dismissed as a matter of law for failing to allege facts to support elements one (outrageous conduct) or three (severe emotional distress).

**B. The IIED Claim should be dismissed as to the Individual Defendants.**

Even if the Court finds that the FAC sufficiently states an IIED claim against the Law

Office, it should nevertheless dismiss the IIED claim as to the Individual Defendants.

As to Mr. Carbone, the FAC alleges that he: denied Plaintiff's requests to have notices of substitution filed while she was on leave (Doc. 10 at ¶¶18–20); denied her the accommodation to work remotely one day a week (*id.* at ¶ 28); told her to handle a one-hour hearing for her case in an email with other employees on it (*id.* at ¶¶ 42-47); reassigned the case after Plaintiff indicated she could not do the hearing (*id.* at ¶ 47); and told her to listen to him and that he was her "superior" (*id.* at ¶ 54).

As to Mr. Hutto, the FAC alleges he: told her that her pay would be docked when she returned from leave to cover health insurance premiums paid for during her leave (*id.* at ¶ 23); denied her request to work from home once a week (*id.* at ¶ 28); printed out a cow picture to be used as a Do Not Disturb sign (*id.* at ¶ 34); criticized her for becoming pregnant to other employees (*id.* at ¶ 35); and did not investigate or provide a solution after Plaintiff reported one time that she experienced "unreasonable work assignment and unfair treatment" (*id.* at ¶¶ 56–58).

As to Ms. McShay, the FAC alleges that she: complimented Plaintiff for having "prolific" drafting skills (*id.* at ¶ 11); told Plaintiff her pregnancy was a "problem" and made Ms. McShay's "job harder" (*id.* at ¶¶ 13, 21); denied her request to work from home once a week (*id.* at ¶ 28); was unwilling to talk to Plaintiff over the phone and insisted Plaintiff speak with her face-to-face (*id.* at ¶ 38); reassigned a client after Plaintiff said she could not do a hearing (*id.* at ¶¶ 44, 47); and communicated she was "supportive of Plaintiff seeking help, encouraged Plaintiff to go to the appointment, and assured Plaintiff she was willing to assist as needed" after Plaintiff allegedly communicated she had post-partum depression and insomnia (*id.* at ¶¶ 60–65).

Even if this Court agreed with Plaintiff that such allegations show evidence of "insensitivity and cruel disregard[,]" that is simply not sufficient to establish a claim against the Individual Defendants. *See Pontikis*, 2016 WL 6127693, at *3.

### C. Further leave to amend would be futile.

Plaintiff should not be granted leave to amend her IIED claim because amendment would

be futile. In assessing whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3); prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Byers v. Maricopa Cnty. Corr. Health Servs.*, No. CV-18-4243-PHX-ROS (JFM), 2020 WL 1004618, at *2 (D. Ariz. Jan. 14, 2020) (quoting *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004)). "Futility alone can justify the denial of . . . leave to amend." *Id.*

Defendants raised the deficiencies in Plaintiff's IIED claim as filed in the original Complaint. Plaintiff amended her complaint, and when the same issues were again raised, Plaintiff indicated she did not believe any further amendments were necessary. In other words, there are apparently no extra facts Plaintiff can plead to support this claim, and any further amendment would be futile.

V.   **Conclusion**

As Arizona courts have repeatedly stated, it is a "rare case" where conduct in the employment context will rise to the level of supporting an intentional infliction of emotional distress claim. This is simply not one of those rare cases. Plaintiff has neither pled sufficiently extreme or outrageous conduct, nor that she suffered severe emotional distress.

Plaintiff has adequately pled discrimination and retaliation claims. Those are the appropriate claims to proceed, which Defendants will address in discovery and through dispositive motion practice. Defendants respectfully request this Court dismiss with prejudice Count Nine (9) in full, or in the alternative, dismiss Count Nine (9) as to the Individual Defendants alone.

RESPECTFULLY SUBMITTED this 29th day of May 2024.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By: /s/ *Andrew S. Lishko*
    Andrew S. Lishko, Esq.
    Carrie A. Laliberte, Esq.
    *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

Shayna Fernandez Watts
FERNANDEZ WATTS LAW PLLC
5040 E. Shea Blvd. Ste. 272
Scottsdale, Arizona 85254
Shayna@FernandezWattsLaw.com
*Attorney for Plaintiff*

/s/ *Elena Cordero*