1  Shayna Fernandez Watts (027342)
2  FERNANDEZ WATTS LAW PLLC
   5040 E. Shea Blvd. Ste. 272
3  Scottsdale, Arizona 85254
   Phone: (602) 760-5100
4  Fax: (602) 760-5130
   Email:Shayna@FernandezWattsLaw.com
5  *Attorney for Plaintiff*

6
7              **IN THE UNITED STATES DISTRICT COURT**

8                 **FOR THE DISTRICT OF ARIZONA**

9  Alexis Lindvall,                      Case No.: CV-24-00768-PHX-DWL

10              Plaintiff,               **RESPONSE TO MOTION TO**
                                         **DISMISS**
11
   v.
12
13 The Law Office of Daniel Hutto, PLLC;
   Daniel Hutto; Shannon McShay; and John
14 Carbone,

15
                Defendants.
16

17        Plaintiff Alexis Lindvall asks the Court to deny Defendants' motion to dismiss her

18 intentional infliction of emotional distress claim because she has pleaded a cognizable legal

19 theory and more than sufficient facts to support a cognizable legal claim. Defendants fired Ms.

20 Lindvall three days after she confided in them that she was suffering from severe postpartum

21 depression and insomnia and that she was seeking emergency inpatient psychiatric

22 hospitalization because a doctor had deemed her a danger to herself and her six-month-old

23 baby. Defendants fired Ms. Lindvall with a Saturday evening emailed letter from an attorney.

24 Moreover, from the time she announced her pregnancy until the termination, Defendants

25 tormented Ms. Lindvall because of her pregnancy and post-partum needs. The facts alleged

26 show the ongoing and callous nature of Defendants' actions intentionally or recklessly

27 committed to cause severe distress to Ms. Lindvall, when Defendants knew Ms. Lindvall was

28 particularly susceptible to emotional distress because she confided in them that she was in the

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

middle of a childbirth-related medical crisis and was seeking emergency treatment for severe post-partum depression. As alleged in the operative complaint, Defendants (i) subjected Plaintiff to months of harassing, derogatory, and abusive treatment because of her pregnancy, including making her post a picture of a cow on her office door while she breast-pumped; (ii) retaliated against Plaintiff and intimidated her when she complained of Defendants' discriminatory treatment; (iii) engaged in flagrant sex-based and pregnancy-based discrimination by firing her explicitly because she sought doctor-ordered medical treatment for postpartum depression and insomnia; (iv) crafted a false narrative to terminate Plaintiff on a Saturday knowing she was in the middle of a mental-health crisis; and (v) terminated Plaintiff knowing that she posed a danger to herself and her infant child. The facts go beyond the "close" calls Arizona courts have previously dismissed at this phase of litigation, and the Court should allow Ms. Lindvall to pursue her claim.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). This requirement is met if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## RELEVANT FACTS SUPPORTING IIED CLAIM

When Defendants hired Ms. Lindvall in 2021, she was a qualified, up and coming Arizona family law attorney with an impeccable record, and prior to Ms. Lindvall revealing her pregnancy, Defendants had never disciplined her for any reason. Doc. 10 at ¶¶ 8-11. To the contrary, Defendants gave Ms. Lindvall outstanding performance reviews praising her

client management, drafting skills, and court performance. Doc. 10 at ¶11. In or around August 2022, Ms. Lindvall revealed her pregnancy to the firm's co-owner, McShay, and the managing attorney, Carbone, and things changed for Ms. Lindvall thereafter. Doc. 10 at ¶11-12. Firm leadership seemed personally offended by Ms. Lindvall's pregnancy and made repeated statements about how Ms. Lindvall's pregnancy was a "problem" for the firm and complained that it made their jobs harder. Doc. 10 at ¶13, 21-22. Ms. Lindvall worked hard to ensure that was not the case, and did everything she could to effectively transition her cases before her leave, despite resistance to the same. Doc. 10 at ¶¶ 15-19.

Ms. Lindvall began a period of unpaid maternity leave beginning on approximately April 3, 2023 and continuing until July 4, 2023. Doc. 10 at ¶27. Ms. Lindvall returned from maternity leave on July 5, 2023 and immediately experienced renewed hostility, discrimination, and retaliation from each of the three individual Defendants, which ultimately led Ms. Lindvall to lodge a formal complaint with the firm. Doc. 10 at ¶31, 51. But in response to that complaint, Carbone and McShay joined the confidential meeting with the firm's outside counsel to yell at Ms. Lindvall and tell her to fall in line. Doc. 10 at ¶¶ 53-54. The investigation did not result in any remedial action and did not follow firm policies. Doc. 10 at ¶¶ 52-55.

Ms. Lindvall also requested accommodations upon her return, one of which was to be able to pump in her office and work while doing so. Doc. 10 at ¶32. In anticipation of Ms. Lindvall's return from maternity leave and need for this accommodation, Hutto printed out and was circulating around the office a picture of a cartoon cow. Ms. Lindvall became aware of the picture and expectation that she put it on her office door as a sort of "Do Not Disturb" sign while pumping. Doc. 10 at ¶¶ 34. Ms. Lindvall pumped three times per day, every day, posting the cartoon cow on her door while doing so, making the intentional ridicule constant. Doc. 10 at ¶36. Ms. Lindvall also learned Hutto discussed her pregnancy with several other employees at the firm while she was on leave, criticizing and deriding her for being pregnant. Doc. 10 at ¶35.

Ms. Lindvall also experienced hostility from other firm employees whenever she needed to pump. Doc. 10 at ¶37. McShay for example was unwilling to talk with Ms. Lindvall

Fernandez Watts Law, pllc
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

on the phone while she was pumping in her office and instead demanded they discuss cases face to face, after Ms. Lindvall was done pumping. Doc. 10 at ¶38. Meanwhile, McShay had no issue holding phone meetings with other employees and was intentionally making Plaintiff's job harder. When Ms. Lindvall returned from leave, Defendants also intentionally tried to set her up to fail by abruptly handing back her entire caseload without the same transitionary period afforded to non-pregnant employees, including a case with pre-hearing deadlines in two days that the associate handling the case on Ms. Lindvall's leave had almost completely neglected. Doc. 10 at ¶40-42. When Ms. Lindvall voiced her concerns about inadequate time to prepare for a high-stakes hearing a mere seven days after her return from maternity leave, Defendants shamed her in front of co-workers, and punitively removed her from the case permanently, despite her objections to the same, which had financial implications for Ms. Lindvall. Doc. 10 at ¶¶ 42-49. Plaintiff attempted to get resolve for the retaliation and hostility once again with Hutto on August 30, 203, but Hutto did not take any action on her complaint. Doc. 10 at ¶¶ 57-58.

On Wednesday, October 11, 2023, Ms. Lindvall had a doctor's appointment related to her post-pregnancy health at 10:15 a.m. Doc. 10 at ¶59. Ms. Lindvall met with McShay on her way to this appointment and told McShay the reason for the appointment—suspected postpartum depression and insomnia. Doc. 10 at ¶60. McShay expressed faux support for Ms. Lindvall, but nevertheless undoubtably understood Ms. Lindvall's need for medical attention. Doc. 10 at ¶61. At the appointment, Ms. Lindvall's doctor diagnosed her as suffering from severe postpartum depression and insomnia and urged her to be hospitalized immediately for treatment and stabilization. Doc. 10 at ¶63. Even though Ms. Lindvall was terrified to do so, Ms. Lindvall returned to the office and communicated the diagnosis to McShay including her imminent hospitalization and need for leave because her doctor determined she was a risk to herself and her 6-month-old baby. Doc. 10 at ¶64-65. Ms. Lindvall's requested accommodation at that moment was for time off for hospitalization and recovery. Doc. 10 at ¶67.

Defendants knew Ms. Lindvall was temporarily out of the office due to a "medical

emergency", and they confirmed Ms. Lindvall's employment status in a court pleading filed on October 11 stating Ms. Lindvall was experiencing a "medical emergency" and that she was "out of the office". Doc. 10 at ¶70-71. Nevertheless, on **Saturday** evening, October 14, Defendants, through their employment law attorney, sent a letter to Ms. Lindvall by email stating her employment ended on October 11, the day she sought emergent hospitalization for severe postpartum depression, because she had allegedly resigned and was allegedly unable to practice law. Doc. 10 at ¶75. In the letter, authored by Andrew Lishko as counsel for the Defendants, Defendants admitted knowing Ms. Lindvall was "struggling with sleeplessness and other issues for the past several weeks," and that Ms. Lindvall told McShay a doctor had advised her "to immediately go to the hospital because [she] had been advised by the mental health professional that [she was] a danger to [her]self and [her] child." Doc. 10 at ¶76. Defendants' letter stated Ms. Lindvall's clients had already all been reassigned, Ms. Lindvall was prohibited from returning to the law office for any reason, and her remote access to email and the firm's system had been disabled. Doc. 10 at ¶77, 98. Because Ms. Lindvall had not resigned and had not stated she was unable to practice law, she responded to the letter from the firm by email on **Sunday**, October 15, refuting the characterization of her disclosures, confirming she was still able to practice law, requesting a return-to-work date and for the firm to engage in the interactive process regarding the same. Doc. 10 at ¶79-80. Before getting any response, on early Monday morning, October 16, and without warning, Defendants directed the Firm process server, who knew Ms. Lindvall only in a professional capacity, to deliver her personal belongings from her office to her home, which caused Ms. Lindvall further embarrassment and trauma. Doc. 10 at ¶¶ 100.

The next day, on **Tuesday**, October 17, Defendants doubled down on the separation, again claiming Ms. Lindvall had resigned and was unable to practice law based on her communications with McShay wherein she disclosed her postpartum depression and insomnia and requested accommodations. Doc. 10 at ¶81. The letter was threatening in nature and a transparent attempt to bully and intimidate Ms. Lindvall against complaining about the termination. Doc. 10 at ¶82. Defendants criticizing Ms. Lindvall's actions 48 hours after being

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

released from the hospital, claiming she should have communicated sooner, even though the termination letter was sent on a Saturday, a day that the Firm does not typically do business, to preempt her response, and contrary to Defendants' previously held position that Ms. Lindvall had resigned. If Defendants believed Ms. Lindvall had resigned, her post release actions would have no relevance, yet Defendants continued to try to manipulate and intimidate Ms. Lindvall with veiled threats to cover up their wrongdoing.

As further evidence of their vindictive intent, knowing Ms. Lindvall would suffer financial hardship after the abrupt termination, Defendants refused to pay Ms. Lindvall her accrued and earned bonus. Doc. 10 at ¶83.

When Defendants terminated Ms. Lindvall, Defendants were aware Ms. Lindvall had been told by her doctor she posed a danger to herself and her child and that she was seeking emergency medical care. Defendants nevertheless intentionally rushed to terminate Ms. Lindvall on a weekend under false pretenses, knowing termination under the circumstances would be extremely distressing for a first-time mother suffering from severe postpartum depression and sleep deprivation. Defendants, however, did not stop there; they continued to send threatening letters with demonstrably false allegations about Ms. Lindvall and her professional abilities when she requested a return-to-work date.

Defendants' actions caused Ms. Lindvall to experience severe emotional distress and physical distress of mind and body including insomnia, anxiety, depression, loss of appetite and nausea, headaches, humiliation, nervousness, excessive crying, loss of self-worth and self-doubt, fear, shock, anger, worry, exhaustion, edginess, and intense anger. Doc. 10 at ¶¶ 88, 89, 90. Ms. Lindvall withdrew from her friends and spent weeks dealing with this distress, while worrying about her ability to provide for her family. Doc. 10 at ¶¶89, 99.

## ARGUMENT

The three elements necessary to establish a claim for intentional infliction of emotional distress are: (1) the defendant's conduct must be capable of being characterized as "extreme and outrageous"; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that distress will result from his conduct; and (3) the defendant's

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

conduct must have caused severe emotional distress. *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). Defendants do not dispute the second element (that Ms. Lindvall adequately plead Defendants' intent or reckless disregard for the near certainty that distress would result) and instead argue the alleged conduct was not extreme and outrageous and Ms. Lindvall did not suffer severe emotional distress.

**I.   Defendants' conduct is "extreme and outrageous" under Arizona law.**

Defendants subjected Ms. Lindvall to months of ridicule and embarrassment, during and after her pregnancy, failed to adequately address her complaints or follow their policies regarding the complaints, and then, after learning Ms. Lindvall was suffering from insomnia and postpartum depression, crafted a false narrative to terminate Ms. Lindvall, concluding without any medical or professional basis that Ms. Lindvall was unable to practice law entirely, imparting the devastating news and assessments on her career knowing she had been deemed a danger to herself and her child, knowing this would strip her of her employer-based medical insurance, knowing their narrative was false, and knowing their actions would harm her. Moreover, they intentionally conspired to deliver the news on the weekend to preempt Ms. Lindvall's return, uncharacteristically prohibiting Ms. Lindvall from ever returning to the firm for any reason and then denying her earned pay. Even after Ms. Lindvall's expressed her written objections to the same, Defendants continued to fabricate her resignation and inability to practice law because she sought emergency medical treatment for postpartum depression, insomnia, and was a danger to herself and baby. They used their positions of authority to intimidate Plaintiff when she made complaints and through their actions after the termination.

The facts in Ms. Lindvall's complaint surpass the standard required for an intentional infliction of emotional distress claim in Arizona. *Ford v. Revlon,* 734 P.2d 580, 585 (Ariz. 1987). Determining whether Ms. Lindvall has alleged "outrageous conduct" and "severe emotional distress" requires a case-by-case analysis. *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 197, 650 P.2d 496, 499 (App. 1982). Factors considered include: (1) the position occupied by the defendant (cmt. e); *see also Humphers v. First Interstate Bank*, 68 Or. App. 573, 684 P.2d 581 (1984) (tortious purpose element of tort of outrageous conduct found in

breach of physician-patient relationship); and (2) defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition (comment f); *see also Richardson v. Pridmore*, 97 Cal.App.2d 124, 217 P.2d 113 (1950) (plaintiff, after suffering a miscarriage, entitled to recover for emotional distress caused by outrageous and intentional conduct of landlord).

### (1)    Defendants were in a position of authority over Ms. Lindvall.

An abuse of one's position or relationship in order to effectuate the actor's interests can impact the extreme and outrageous nature of the conduct at issue. When a person uses power to affect their interest, it makes the conduct more outrageous. *Lucchesi v. Stimmell*, 149 Ariz. at 79, 716 P.2d at 1013; Restatement (2d) of Torts § 46, cmt. e. Ms. Lindvall was an employee and Defendants were her employers and supervisors. Defendants used their power to intimidate Ms. Lindvall when she made complaints, subject her to ridicule and embarrassment, and then fire her.  For example, Carbone and McShay used intimidation and their positions of authority to intrude on Ms. Lindvall's confidential meeting with outside counsel and challenge Ms. Lindvall directly when Ms. Lindvall lodged a complaint about discrimination and harassment.  Carbone ultimately yelled at Ms. Lindvall in this meeting and told her she was to "You will listen to me while I speak! I am your superior!" Again, this was done at what was supposed to be a meeting with outside counsel regarding Ms. Lindvall's complaints of discrimination and harassment, but Defendants wanted to shut down Ms. Lindvall using intimidation.  Hutto also used his position of authority to circulate and mock Plaintiff by printing out a picture of a cartoon cow for Ms. Lindvall to use as her do not disturb sign while pumping, knowing as her supervisor, it would be harder to refuse. McShay also used her position of authority and faux support to get Ms. Lindvall to confide in her regarding her conditions, despite the fact she intended to terminate Ms. Lindvall's employment that day explicitly because of these conditions. Instead of supporting her, McShay used the information Ms. Lindvall disclosed to conspire with her partners regarding turning Ms. Lindvall's disclosure into a resignation knowing she was already suffering. Defendants used their positions of authority to effectuate their interest in harming, intimidating, and terminating Ms.

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

1  Lindvall.

2         **(2)   Defendants knew Ms. Lindvall was peculiarly susceptible to emotional**

3                **distress by reason of some physical or mental condition.**

4        At the time they fired her, Defendants knew Ms. Lindvall was particularly susceptible

5  to emotional distress, as she confided in them that she was suicidal and suffering from post-

6  partum depression. Defendants' knowledge of Ms. Lindvall's state of mind makes the conduct

7  all the more outrageous. "The extreme and outrageous character of the conduct may arise from

8  the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason

9  of some physical or mental condition or peculiarity. The conduct may become heartless,

10  flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it

11  would not be so if he did not know." Restatement 2d of Torts § 46, cmt. f; *accord, Lucchesi v.*

12  *Stimmell*, 149 Ariz. 76, 79, 716 P.2d 1013 (1986).

13        It is difficult to imagine conduct more "atrocious and utterly intolerable in a civilized

14  community" than to intentionally risk harm to a sick person and her baby. *See* Restatement 2d

15  of Torts § 46 cmt. d, f (highlighting examples where liability is based on knowledge).

16  Defendants cannot deny knowing Ms. Lindvall was suffering from post-partum depression,

17  insomnia, and that she was a danger to herself and her baby because they included this in their

18  termination notice, but Defendants have ignored this aspect of the analysis, attempting to

19  characterize Ms. Lindvall's claim as a typical employment scenario and separation.

20  Defendants' treatment of Ms. Lindvall was anything but typical and certainly not tolerable in

21  a civilized society. Ms. Lindvall told Defendants she was suicidal and a danger to herself and

22  her baby, and the very next thing they did, before checking on her or her status, was to send a

23  one-way communication notifying her she was terminated and unable to practice law with a

24  manipulative narrative, jeopardizing her sense of stability further. In the employment context

25  or not, the facts are beyond all possible bounds of decency given Ms. Lindvall's status, and

26  therefore are outrageous under Arizona law.

27  **II.  Defendants' conduct caused Ms. Lindvall severe emotional distress.**

28        Ms. Lindvall suffered from severe emotional distress because of the Defendants'

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

actions, and she pleaded these details in her complaint. Ms. Lindvall became suicidal while working for Defendants after being subjected to months of ridicule and embarrassment, and then after being terminated, suffered from the mental and physical conditions alleged. Specifically, Defendants' actions caused Ms. Lindvall to experience severe emotional distress and physical distress of mind and body including insomnia, anxiety, depression, loss of appetite and nausea, headaches, humiliation, nervousness, excessive crying, loss of self-worth and self-doubt, fear, shock, anger, worry, exhaustion, edginess, and intense anger, and social withdrawal for weeks. Doc. 10 at ¶¶ 88, 89, 90, 99.

Defendants have again isolated Ms. Lindvall's allegations and suffering in an attempt to minimize the distress Ms. Lindvall experienced, relying on cases decided at summary judgment, to do so. Ms. Lindvall was not suffering from the type of distress a lawyer should be expected to endure at the hands of her employer. Defendants' attempt to normalize Ms. Lindvall's suffering as the type of suffering experience by lawyers is wrong. Defendants caused Ms. Lindvall to experience severe emotional distress that was of a much greater dimension than the day-to-day mental stress any employee, including lawyers, might experience from a job. The severe emotional distress alleged (including depression, headaches, nausea, insomnia, anxiety, loss of appetite, humiliation, nervousness, excessive crying, loss of self-worth and self-doubt, fear, shock, anger, worry, exhaustion, edginess, and intense anger, and social withdrawal) are more than sufficient to state a claim for severe emotional distress. *Pankratz v. Willis*, 744 P.2d 1182, 1197 (Ariz. App. 1987) (anger and depression coupled with physical ailments like headaches, constitute severe emotional distress).

**III. Cases cited by Defendants are distinguishable and inapplicable.**

In *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 905 P.2d 559 (Ariz. Ct. App. 1995), a divided Arizona Court of Appeals panel held Bell Atlantic did not engage in sufficiently "extreme and outrageous" conduct when it "called [an employee] back to work sooner than her doctor recommended" and later "hand delivered a letter to [her] in the hospital." *Id.* at 563–64. Although the court ultimately dismissed the IIED claim, it acknowledged the employer's conduct presented a "close[]" intentional infliction of emotional

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

distress case, given the employee's "known susceptibility to emotional problems" at the time. *Id*. at 563; *see also* Restatement (Second) of Torts § 46 cmt. f. The facts are easily distinguishable. First, Mintz was hospitalized for severe emotional and psychological problems, and Bell Atlantic did not immediately terminate Mintz when they learned this. Instead, Mintz began receiving short term disability benefits and **remained employed for three months while on leave**. About three months later, when Mintz's disability benefits ended, but prior to when Mintz's doctor recommended, Bell Atlantic **directed Mintz to return to work**. By contrast, Defendants ***terminated*** Ms. Lindvall within days of her disclosing her need for hospitalization, and Defendants ***prohibited*** Ms. Lindvall from returning to work, ***insulting*** her and her ability to practice law thereafter. And finally, after Mintz returned to work, the "stress" of her job put her back into the hospital the following day, and Bell Atlantic informed Mintz that her job duties were being reassigned. Ms. Lindvall was ***suicidal*** and suffering from ***post-partum depression***, and Defendants knew Ms. Lindvall was seeking emergency treatment for these conditions, and yet immediately terminated her with a false reason and prohibited her from coming back to the firm for any reason. Furthermore, Ms. Lindvall's severe emotional distress was directly caused by Defendants actions and inactions, not the stress of returning to work as Mintz alleged. Plaintiff's complaint makes clear Defendants' conduct was far more depraved, callous, and intentional than the employer's conduct in *Mintz*. *See* Doc. 10 at ¶¶ 28–38, 59–65, 75–82, 89–102. The allegations in Ms. Lindvall's complaint surpass the "close" call in *Mintz* and adequately plead a claim for intentional infliction of emotional distress.

The cases cited by Defendant and decided at the summary judgment phase of litigation are also unavailing. In *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013 (D. Ariz. 2011), the plaintiff alleged having to listen to sex talk at work was outrageous but did not allege an abuse of authority or known susceptibility to emotional distress. In *Matson v. Safeway, Inc.*, No. 3:12-CV-12-8206-PCT-PGR, 2013 WL 6628257, at *6-7 (D. Ariz. Dec. 17, 2013), the plaintiff alleged wrongful termination after the defendant suspended plaintiff, investigated a shoplifting incident, and concluded that five employees, including plaintiff, violated its

shoplifting policy, but again plaintiff did not allege an abuse of authority or known susceptibility to emotional distress. In *Nelson v. Phoenix Resort Corp., 888 P.2d 1375, 1386-87 (Ariz. App. 1984)*, the plaintiff alleged his employer breached a contract and terminated him in a highly embarrassing manner, but the plaintiff did not allege conditions that would make him susceptible to emotional distress.  In *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 747–48 (9th Cir. 2004), the plaintiff alleged it was outrageous conduct to be terminated for harassing a gay subordinate, largely because of her religious excuses for doing so, but alleged no other conduct other than the termination itself to establish the IIED claim.  In *Midas Muffler Shop v. Ellison,* 650 P.2d 496, 501 (Ariz. App. 1982), the plaintiff alleged vulgar phone calls were outrageous, but there was no known susceptibility to emotional distress. And in *Spratt v. N. Auto. Corp.*, 958 F.Supp. 456, 461 (D. Ariz. 1996), the plaintiff had not presented any evidence of outrageous conduct other than the termination itself for alleged theft, failure to follow company policy regarding the exchange of merchandise, and failure to report a co-worker's falsification of a timecard.

Cases cited by Defendants that were decided by a 12(b)(6) or 12(c) motion are also easily distinguishable. In *Reel Precision, Inc. v. FedEx Ground Package Sys., Inc.*, No. CV-15-02660-PHX-NVW, 2016 WL 4194533, the plaintiff, a business, had a contract with the defendant. Defendant was accused of making employees do what they called the "walk of shame" to the accident board after an accident occurred, and the Court found this was not outrageous. Again, there is no allegation the plaintiff in that case was depressed, suicidal, or particularly susceptible to emotional distress. In *Pontikis v. Lucid USA Inc.*, No. CV-22-02061-PHX-GMS, 2023 WL 6127693, at *3 (D. Ariz. Sept. 19, 2023) the plaintiff alleged she was not promoted, publicly reprimand, received negative comments, and was ostracized. The Court found the allegations did not state a claim for outrageous conduct. Here again, the plaintiff did not allege they disclosed they were depressed or suicidal or otherwise susceptible to any form of emotional distress.

Defendants' motion should instead be decided using the standard for 12(b)(6) motions in *Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1003-04 (D. Ariz. 2004), *Thorp v. Home Health*

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

*Agency-Arizona, Inc.*, 941 F.Supp.2d 1138 (D. Ariz. 2013), and *Forsman v. Chicago Title Insurance Company*, No. 05-CV-3514-PHX-FJM (D. Ariz. Jan. 20, 2006). Under the holdings of these cases, a reasonable member of this community could find Defendants' actions outrageous making dismissal inappropriate.

In *Coffin*, the Court denied Safeway's motion to dismiss plaintiff's IIED claim because plaintiff alleged her supervisor had made repeated unwanted sexual comments, would caress plaintiff's hands in a sexual manner, and would walk up close behind her and tell plaintiff he wanted to rub up against her body. Additionally, the plaintiff alleged that female employees had complained to the store manager about the supervisor's behavior and that no action was taken. Noting that the case was at the initial filing stage, rather than in summary judgment proceedings, the *Coffin* court determined the plaintiff had adequately alleged a claim for intentional infliction of emotional distress.

Similarly, in *Thorp*, the plaintiff alleged the employer "made the topic of drug use and abuse, sex and sexual activity, the mockery of religious and moral stances on private issues, and/or the religious and moral choices of the [company's] employees almost daily topics of conversation[.]" 951 F.Supp.2d at 1141. The plaintiff reported the conduct multiple times, but no supervisor took action other than to advise plaintiff to avoid or ignore the conduct. *Id*. at 1142. The plaintiff also alleged that, as a result of his complaints, "his job duties were significantly escalated, requiring him to do twice the work of someone else in his position, and to perform other tasks not required of other similarly-ranked employees, as well as work on holidays that were identified as non-working holidays in the employee handbook, and, in addition, his previously-approved time off was cancelled." *Id*. The *Thorp* court found that, because reasonable minds could differ about whether the defendant's alleged conduct was sufficiently outrageous, dismissal was not appropriate.

And in *Forsman* the Court denied the defendants motion to dismiss plaintiff's IIED claim when the employer failed to take action to stop sexual harassment. The plaintiff alleged her supervisor failed to prevent ongoing verbal and physical sexual harassment, that her co-worker retaliated against her, that she complained to her supervisor about the retaliation and was

F̲ERNANDEZ W̲ATTS L̲AW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

thereafter discharged; defendant subsequently rehired plaintiff but constructively discharged her due to what Plaintiff alleged as intolerable treatment. The court reasoned:

> Assuming that all of these allegations are true, as we must for purposes of the motion to dismiss, we believe that a reasonable member of this community could find Chicago Title's conduct outrageous. As in *Ford*, this case involves allegations of physical abuse or assault, factors not present in *Mintz*. In any event, a society's sense of outrage evolves with time, and therefore, while a court's presumption regarding the values of a community that existed ten or twenty years ago may be persuasive, it certainly is not dispositive.

*Forsman v. Chicago Title Insurance Company*, No. 05-CV-3514-PHX-FJM, at *5 (D. Ariz. Jan. 20, 2006). Similar to our community value of preventing and stopping sexual harassment, on June 26, 2023, the Pregnant Workers Fairness Act went into effect codifying the values our community mandates for pregnant and postpartum workers. The law specifically ensures pregnant and postpartum workers are not forced off the job, and can get the accommodations they need, without facing discrimination or retaliation in the workplace. Defendants' actions here do the exact opposite by not only denying Ms. Lindvall the keep her job but punishing her for disclosing her condition. Accordingly, the Court should determine their actions are more than sufficiently severe and outrageous and deny Defendants' motion.

**IV. Defendants Hutto, McShay, and Carbone should not be dismissed because they are joint tortfeasors.**

Defendants' sole argument for dismissing the individual Defendants is they each committed acts that independently do not rise to the level needed to establish liability against each of them. But Ms. Lindvall's complaint alleges Defendants are joint tortfeasors, who each committed specific acts, as described herein, that are cumulatively sufficient to establish a claim for intentional infliction of emotional distress. The acts resulted in severe emotional distress, an indivisible injury for which the jury should be allowed to apportion the appropriate fault. The Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. §§ 12-2501 to 12-2509, requires apportionment of damages based on degrees of fault. *See* A.R.S. §§ 12–2506(A) ("Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault...."); –2506(B) ("In assessing percentages of

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254

fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury....”). “Fault” is defined as “an actionable breach of legal duty, act or omission....” A.R.S. § 12–2506(F)(2); *see Dietz v. General Elec. Co.*, 169 Ariz. 505, 821 P.2d 166 (1991) (joint tortfeasor may require employer’s negligence to be considered for assessment of fault under A.R.S. § 12-2506 when employer negligently contributes to employee’s injury)...” The individual Defendants will ultimately only be liable for the damages sustained based on the degree of fault considered by the factfinder, but at this early stage in the case, it is impossible to know how to attribute that fault without discovery. For the reasons explained herein, they should not be dismissed at this phase of the litigation.

If the Court finds Ms. Lindvall’s claim is insufficiently pled, she requests leave to amend to add additional allegations to support her claim or to add the claim for intentional infliction of emotional distress after more discovery into Defendants’ collective and individual actions. *See* Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be “freely give[n]”).

## **CONCLUSION**

Contrary to the cases cited by Defendants with easily distinguishable facts and less egregious allegations, most of which were decided on summary judgment under a different legal standard, the court should find Ms. Lindvall has pleaded extreme and outrageous conduct that permits recovery. A claim for intentional infliction of emotional distress should be permitted to proceed if the court determines that “reasonable [people] may differ” as to whether the conduct was sufficiently extreme and outrageous to result in liability. *Lucchesi,* 149 Ariz. at 79, 716 P.2d at 1016 (quoting Restatement 2d of Torts § 46 cmt. h). The ongoing and intentional nature of Defendants’ actions towards Ms. Lindvall and failure to address her complaints regarding the same, that culminated in Defendants terminating Ms. Lindvall upon her disclosure of post-partum depression, in the manner in which did, through deceitful means and intimidation, when Defendants knew or should have known Ms. Lindvall was particularly vulnerable to the type of severe emotional distress they caused was extreme and outrageous. The Court should deny Defendants Motion to Dismiss and Ms. Lindvall should be allowed to proceed with disclosures and discovery on all the claims set forth in her First Amended

1   Complaint.

2       DATED this 12th day of June 2024.

3                                   FERNANDEZ WATTS LAW PLLC

4

5                                   /s/*Shayna Fernandez Watts*
                                    5040 E. Shea Blvd. Ste. 272
6                                   Scottsdale, Arizona 85254
                                    *Attorney for Plaintiff*
7

8                   **CERTIFICATE OF SERVICE**

9       I hereby certify that on June 12, 2024, I electronically transmitted the foregoing

10  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

11  of Electronic Filing to all CM/ECF registrants:

12      MAY POTENZA BARAN & GILLESPIE
13      Andrew S. Lishko
        Central Arts Plaza
14      1850 N. Central Ave., 16th Floor
        Phoenix, AZ 85004-4633
15      602.252.1900
        alishko@maypotenza.com
16

17  /s/ *Tiffany Fernandez*

18

19

20

21

22

23

24

25

26

27

28

FERNANDEZ WATTS LAW, PLLC
5040 E. Shea Boulevard, Ste. 272
Scottsdale, Arizona 85254